JOHN CRAGGS *et al* v. ELIJAH EARLS.

(Filed Aug. 24, 1899.)

1. . REAL ESTATE—*Vendor's Lien.* One who sells real property has a special vendor's lien thereon, independent of possession, for so much of the price as rema'ns unpaid and unsecured, otherwise than by the personal obligation of the buyer, subject to the rights of purchasers and incumbrancers in good faith without notice. (Sess. Laws 1895, p. 164.)

2. SAME—*Right of Possession.* One who purchases real estate is, in the absence of an agreement to the contrary, entitled to possession when the conveyance is executed but failure of the vendor to deliver possession will not defeat his right to maintain an action to recover balance of purchase money. The value of the use of the land during the time he wrongfully withholds possession is a proper matter of set-off or counter-claim in an action for purchase money.

3. APPEAL AND ERROR—*Findings of Fact.* Where a cause is tried to the court, upon controverted questions of fact, and, there is evi-

dence reasonably tending to support the findings of the trial court, the findings will not be disturbed on the weight of the evidence.

(Syllabus by the Court.)

*Error from the District Court of Pottawatomie County; before B. F. Burwell, District Judge.*

*W. W. Noffsinger,* for plaintiffs in error.

*Cutlip & Blakeney* and *J. H. Woods,* for defendant in error.

Action by Elijah Earls against John Craggs and another. Judgment for plaintiff, and defendants bring error. Affirmed.

### STATEMENT OF THE CASE.

The plaintiffs in error purchased of Earls a tract of land near Earlsboro, in Pottawatomie county, Oklahoma, and Earls conveyed the land by warranty deed to H. E. Craggs, at the request of John Craggs. The consideration agreed upon was $1,600, and the Craggs agreed to assume a prior mortgage of $400 and accrued interest, pay $300 in cash, give a note for $100, and deliver to Earls, at Earlsboro, a certain horse, which was to be in satisfaction of the balance of purchase price. One E. F. Mitchell was acting as a mutual agent between the parties, and received a commission from each of them for consummating the trade. Mitchell paid Earls the $300 for Craggs, and delivered him the $100 note, and also tendered him a horse of a different description from the one agreed upon. Earls refused to accept the horse, and, after the note came due and was not paid, brought suit against both the Craggs for $750, the balance of purchase price represented by

the agreed price of the horse, and to have the same declared a special vendor's lien upon the land, subject to the $400 mortgage. The possession of the land was never delivered to Craggs.

The Craggs, for defense to the action, admitted that they had paid Earls $350 cash; alleged that they had paid the $100 note, and that they agreed to pay the $400 mortgage, and that they had delivered the horse as agreed, except that there was a mistake as to the color of the horse; that it was the intention of the parties to trade a bay horse, but, by mistake, he was described as a sorrel horse; that Earls had retained possession of the land, and that it was of the rental value of $300, in which sum they had been damaged by the failure of Earls to deliver possession. There was also a general denial. Reply was filed, and the case was tried to the court.

The court found for the plaintiff, Earls, and found that, by the terms of the agreement, the defendants were to deliver to Earls, at Earlsboro, as part purchase price for the land, a certain described stallion, of the value of $750, and that they had failed to deliver the horse, or pay the balance of purchase price in money. Judgment was rendered in favor of Earls for the sum of $750, and said sum declared a lien on the land which Earls had conveyed to Craggs. Possession of the land was awarded to Craggs. The defendants, the two Craggs, appealed from this judgment.

Opinion of the court by

BURFORD, C. J.: The first contention by plaintiffs in error is that Earls could not recover or enforce a vendor's lien until he had surrendered possession of the land. If this were an action to enforce specific performance of a

contract, this contention would probably be well founded. But we do not think the right of the plaintiff, Earls, to recover balance of purchase money was at all dependent upon the question of possession. The debt was due, and it was unpaid. This gave him a right of action. The value of the possession was a legitimate matter of counter-claim or set-off, and was a proper matter of defense. The record discloses the fact that the failure to deliver possession was pleaded in this case, and the value of the use of the land set up as damages. No damages were proved on the trial; hence this defense failed. The authorities cited by counsel for plaintiffs in error are not applicable to this case. In each of the cases cited the title remained in the vendor, and the case was either a suit to recover purchase money or enforce specific performance of contract.

In this case the title had passed to the vendees, and this action is for the purpose of enforcing a vendor's lien for unpaid purchase money. Our statute conclusively settled the question, and leaves no room for argument. Section 1, ch. 34, p. 164, Sesion Laws of 1895, provides: "One who sells real property has a special vendor's lien thereon independent of possession, for so much of the price as remains unpaid and unsecured, otherwise than by the personal obligation of the buyer, subject to the rights of purchasers and incumbrancers in good faith without notice." Whatever the rule may be in other jurisdictions, the statute fixes the rule which must govern in this Territory.

It is further contended that Mitchell was the agent of Earls, and that Craggs delivered the note, money, and horse to Mitchell for Earls, and that Mitchell accepted

—30

them; consequently this was a payment to Earls, and a satisfaction of the contract. The facts do not warrant this conclusion. The horse was to be delivered to Earls at Earlsboro. He did not authorize Mitchell or any one else to receive the horse at any other place. Mitchell took the horse to Earlsboro, and tendered him to Earls. He must have been acting for Craggs in making this tender or offer to deliver. Earls refused 'the horse tendered because it was not the kind of a horse they had agreed to deliver him. The whole question was before the trial court on the facts, and testimony was introduced on both sides. We cannot disturb the finding of the trial court upon controverted questions of fact.

The only other assignment of error presented in the brief of plaintiffs in error is that the court erred in the assessment of damages. The court permitted the defendants below to offer evidence of the usable value of the possession of the land from date of the conveyance to the time of trial. There was no proof of any damages by reason of the failure to deliver possession. The question of what the agreement between the parties was, it being an oral agreement, was a controverted one on the trial. The court found that the agreed purchase price of the land was $1,600, and the agreed price of the horse was $750, and that, by reason of the failure to deliver the horse, there was yet due on the purchase price of the land the sum of $750. Upon an examination of the evidence in the record, we are of the opinion the trial court committed no error. The judgment of the district court is affirmed, at the costs of the plaintiffs in error.

Burwell, J., having presided in the court below, not sitting; all of the other Justices concurring.